**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LISA ANDERSON, on behalf of herself and
all others similarly situated,

      Plaintiffs,

v.

AMERICAN DENTAL ASSOCIATES, LTD.,

      Defendant.

<u>Civil Action No.</u> 1:26-cv-01084

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................... 4

II. STATEMENT OF FACTS .......................................................................................... 5

    A. The Demand Letter and Immediate Remediation .................................................. 5

    B. The Complaint and Completion of Remediation .................................................. 6

III. ARGUMENT ............................................................................................................. 7

    A. This Case Should Be Dismissed Because Plaintiff's Claims Are Moot ............................. 7

        1. Title III provides only injunctive relief; there are no damages to award. ......................... 7

        2. Every alleged barrier has been remediated—most of them before the Complaint was filed. ...................................................................................................................... 8

        3. Defendant has met the "heavy burden" under the voluntary cessation doctrine. .............. 9

        4. Plaintiff's anticipated counter-arguments are unavailing. ............................................ 10

        5. The class action allegations do not save the case from mootness. .................................. 11

    B. Alternatively, Plaintiff Lacks Article III Standing ................................................. 11

        1. Plaintiff's claims are not redressable. ...................................................................... 11

        2. Plaintiff's "intent to return" is conclusory. .............................................................. 11

        3. The alleged injury is stale. ................................................................................... 12

    C. Alternatively, the Complaint Fails to State a Claim ............................................... 12

        1. The Complaint is boilerplate. ............................................................................... 12

        2. No legally mandated WCAG standard exists for Title III. ............................................ 12

        3. The unexplained expansion of allegations undermines credibility. ................................ 12

IV. CONCLUSION .......................................................................................................... 13

CERTIFICATE OF SERVICE ........................................................................................ 14

# <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Acheson Hotels, LLC v. Laufer, 601 U.S. 1* (2023) ........................................................... 11

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .......................................................... 5, 8, 11

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) 13

*Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) ...................................... 4, 7

*FBI v. Fikre*, 601 U.S. 234 (2024) ........................................................................... 9, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............. 9, 13

*Honig v. Doe*, 484 U.S. 305 (1988) ............................................................................. 8

*L.A. v. Lyons*, 461 U.S. 95 (1983) ......................................................................... 11, 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..................................................... 11

*Morgan v. Joint Admin. Bd.*, 268 F.3d 456 (7th Cir. 2001) ............................................. 12

*Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988) ..................................................... 9

*Scherr v. Marriott Int'l*, 703 F.3d 1069 (7th Cir. 2013) ................................................ 11

*Silha v. ACT, Inc.*, 807 F.3d 169 (7th Cir. 2015). ....................................................... 11

**<u>Statutes</u>**

42 U.S.C. § 12188(a)(1) ........................................................................................... 4, 7

# I. INTRODUCTION

This case is moot. Every accessibility barrier alleged in the Complaint was remediated *before* Plaintiff's counsel ever filed this lawsuit.

Defendant American Dental Associates, Ltd. ("Defendant") is a community dental practice serving the greater Chicago area. When Defendant's principal, Dhiraj Sharma, received a pre-litigation demand letter on December 15, 2025, he did not ignore it, and he did not wait to be sued. He immediately retained a technology consultant and directed a comprehensive remediation of the practice's website, atooth.com. (Sharma Decl. ¶¶ 4–6.) That consultant commenced work on January 8, 2026, making structural changes to the website's source code—adding ARIA attributes, restructuring heading hierarchies, installing keyboard navigation, and assigning navigation landmark roles. (Lentz Decl. ¶¶ 4–5.) **The bulk of that remediation was complete by January 30, 2026, when Plaintiff's counsel filed this Complaint.** (Lentz Decl. ¶¶ 4–5.) By the time the Complaint was served on February 6, 2026, 500 individual remediations had been documented across more than ten webpages and fifteen asset categories. (Lentz Decl. ¶¶ 7–8; Lentz Decl., Ex. 1.)

Plaintiff's counsel thus filed suit against a defendant that was already in the process of doing exactly what the lawsuit would ask a court to order. And by the time the lawsuit was served, the work was done.

Title III of the ADA provides private plaintiffs with exactly one remedy: injunctive relief. 42 U.S.C. § 12188(a)(1); see *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 564 (7th Cir. 1999). There are no damages. There are no penalties. There is only the power of this Court to order that barriers be removed. But the barriers have already been removed—comprehensively, permanently, and in good faith. A continuous automated monitoring tool scans the website around the clock.

(Lentz Decl. ¶¶ 6, 13.) A public Accessibility Statement commits Defendant to WCAG 2.1 AA compliance. (Lentz Decl. ¶ 12; Lentz Decl., Ex. 2.) There is nothing left for this Court to enjoin.

"[W]hen the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," the case must be dismissed. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). This case is moot.

## II. STATEMENT OF FACTS

Defendant American Dental Associates, Ltd. is an Illinois corporation that operates a dental practice with its principal place of business at 5342 South Archer Avenue, Chicago, Illinois. (Compl. ¶ 20; Sharma Decl. ¶ 1.) Defendant maintains a website at atooth.com that provides information about its dental services and allows patients to schedule appointments. (Compl. ¶¶ 21, 29; Sharma Decl. ¶ 3.)

Plaintiff Lisa Anderson is a visually impaired individual residing in Cook County, Illinois, who alleges she requires screen-reading software to access website content. (Compl. ¶¶ 2, 18–19.) Her counsel, Equal Access Law Group, PLLC, is among the highest-volume ADA website accessibility filers in the country, having filed over 200 such lawsuits in the first half of 2025 alone.

A. The Demand Letter and Immediate Remediation

On December 15, 2025, Plaintiff's counsel served a demand letter on Mr. Sharma alleging that Plaintiff had visited atooth.com on September 8, 2025, and encountered three specific accessibility barriers: (1) the absence of a "Skip to content" link; (2) drop-down sub-menus that were not keyboard-operable; and (3) date and time selection controls that were not focusable using the Tab key. (Sharma Decl. ¶ 4; Sharma Decl., Ex. 1 at App. B.) The letter demanded $15,000 in settlement with a response deadline of January 15, 2026. (Sharma Decl. ¶ 4; Sharma Decl., Ex. 1 at 2.)

Upon receiving the demand letter, Mr. Sharma immediately retained Ken Lentz, a technology consultant at InTune Digital, to evaluate and remediate the Website's accessibility. (Sharma Decl. ¶¶ 5–6.) Mr. Sharma instructed Mr. Lentz to conduct a comprehensive review—not limited to the three barriers in the demand letter—and to address all accessibility issues he identified. (Sharma Decl. ¶ 6; Lentz Decl. ¶ 3.)

Mr. Lentz commenced remediation work on January 8, 2026. (Lentz Decl. ¶ 4.) His work included structural changes to the Website's HTML code, including the addition of ARIA attributes, restructuring of heading hierarchies, installation of keyboard event handlers, and assignment of navigation landmark roles. (Lentz Decl. ¶¶ 5(a)–(e).) At no point did Defendant communicate with Plaintiff's counsel prior to being served. (Sharma Decl. ¶ 13.)

B.  The Complaint and Completion of Remediation

On January 30, 2026, Plaintiff filed this Complaint—while Mr. Lentz's remediation work was actively underway and the bulk of the manual remediation had already been completed. (Lentz Decl. ¶¶ 4–5.) The Complaint expanded the alleged barriers from the three identified in the demand letter to eight. (Compare Sharma Decl., Ex. 1, App. B, *with* Compl. ¶ 35(a)–(h).) The Complaint was served on February 6, 2026. (Sharma Decl. ¶ 8.)

In reality, just a day before, at Mr. Sharma's direction, Mr. Lentz deployed accessiBe's accessWidget tool to supplement the manual work and provide continuous automated monitoring. (Sharma Decl. ¶ 9; Lentz Decl. ¶ 6.) The system generated a Remediation Summary Report documenting 500 individual remediations. (Lentz Decl. ¶ 7; Lentz Decl., Ex. 1.)

| Asset Category | Remediations | Complaint Allegation |
|---|---|---|
| **Keyboard Navigation** | 46 | ¶ 35(a); Demand Ltr. #2–3 |
| **Skip Links** | 1 | ¶ 35(b); Demand Ltr. #1 |

| Navigations | 8 | ¶ 35(c) |
|---|---|---|
| Links | 41 | ¶ 35(d)–(f) |
| Buttons | 50 | ¶ 35(g)–(h) |
| Dropdowns | 8 | Demand Ltr. #2 |
| Headings | 132 | Structural accessibility |
| Hiddens | 18 | Hidden element accessibility |

(Lentz Decl. ¶¶ 7–8; Lentz Decl., Ex. 1.) These remediations spanned at least ten pages of the Website. (Lentz Decl. ¶ 8.)

On February 8, 2026, an Accessibility Statement was published on atooth.com, publicly committing Defendant to WCAG 2.1 AA compliance. (Lentz Decl. ¶ 12; Lentz Decl., Ex. 2.) The accessiBe tool continues to run, and Mr. Lentz maintains an ongoing relationship with American Dental for accessibility monitoring. (Lentz Decl. ¶ 13; Sharma Decl. ¶ 11.)

### III.  ARGUMENT

A.  This Case Should Be Dismissed Because Plaintiff's Claims Are Moot

*1.  Title III provides only injunctive relief; there are no damages to award.*

Title III does not authorize private plaintiffs to recover monetary damages. 42 U.S.C. § 12188(a)(1). The only remedy is injunctive relief. The Seventh Circuit has recognized the breadth of Title III's reach. "The core meaning of this provision, plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." *Doe*, 179 F.3d at 559. But, the remedy for violations is limited to a court order removing barriers.

When those barriers are removed, "the issues presented are no longer live [and] the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91; see also *Honig v. Doe*, 484 U.S. 305, 317 (1988). An injunction ordering Defendant to make its website accessible would order it to do what it has already done.

*2.  Every alleged barrier has been remediated—most of them before the Complaint was filed.*

The Complaint identifies eight accessibility barriers. (Compl. ¶ 35(a)–(h).) The demand letter identified three. (Sharma Decl., Ex. 1, App. B.) Every one has been remediated, as documented in the Remediation Report and the Lentz Declaration:

**Tab-key focus (¶ 35(a)).**  46 keyboard navigation remediations. (Lentz Decl. ¶ 10(a); Lentz Decl., Ex. 1.)

**Skip-to-content link (¶ 35(b)).**  Skip-links module implemented. (Lentz Decl. ¶ 10(b); Lentz Decl., Ex. 1.)

**Navigation menu (¶ 35(c)).**  8 navigation remediations with ARIA roles. (Lentz Decl. ¶ 10(c); Lentz Decl., Ex. 1.)

**Logo alt-text (¶ 35(d)).**  41 link remediations with screen-reader-only text. (Lentz Decl. ¶ 10(d); Lentz Decl., Ex. 1.)

**External link indicators (¶ 35(e)–(f)).**  "New Window" indicators added. (Lentz Decl. ¶¶ 10(e)–(f); Lentz Decl., Ex. 1.)

**Checkbox/required status (¶ 35(g)).**  50 button remediations. (Lentz Decl. ¶ 10(g); Lentz Decl., Ex. 1.)

**Interactive element labels (¶ 35(h)).**  ARIA labels and role assignments added. (Lentz Decl. ¶ 10(h); Lentz Decl., Ex. 1.)

The 500 total remediations far exceed the specifically alleged barriers. The remediation was comprehensive and site-wide, not piecemeal. (Lentz Decl. ¶¶ 8–9, 15.) And critically, the manual remediation work that addressed the core of Plaintiff's allegations was substantially complete before the Complaint was even filed. (Lentz Decl. ¶¶ 4–5.) Nowhere does the Plaintiff's Complaint indicate any attempt to revisit the website in between the time period of having sent a demand letter and having filed a Complaint.

*3. Defendant has met the "heavy burden" under the voluntary cessation doctrine.*

"It is well settled that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Id.* The Supreme Court recently reaffirmed that the critical inquiry is "what repudiation can prove about [the defendant's] future conduct." *FBI v. Fikre*, 601 U.S. 234, 244 (2024). The Seventh Circuit applies this standard. See *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988).

Defendant meets this burden through six reinforcing factors:

**First, the remediations are permanent structural code changes.** ARIA attributes, heading hierarchies, keyboard event handlers, and navigation roles have been embedded in the Website's source code. They cannot be undone by inadvertence; they would have to be

affirmatively removed. The Remediation Report provides selector-level documentation of each change. (Lentz Decl. ¶¶ 5, 9; Lentz Decl., Ex. 1.)

**Second, Defendant has deployed continuous automated monitoring.** The accessWidget tool runs at all times, scanning the Website and correcting issues as content is updated—an ongoing compliance infrastructure, not a one-time fix. (Lentz Decl. ¶¶ 6(a)–(d), 13.)

**Third, Defendant has made a binding public commitment.** The Accessibility Statement commits Defendant to WCAG 2.1 AA compliance and provides a contact channel for accessibility concerns. (Lentz Decl. ¶ 12; Lentz Decl., Ex. 2.)

**Fourth, Defendant has retained qualified professionals.** Defendant maintains its relationship with Mr. Lentz and InTune Digital for ongoing maintenance and monitoring. (Sharma Decl. ¶ 11; Lentz Decl. ¶ 13.)

**Fifth, Defendant has no incentive to revert.** American Dental is a dental practice serving the public, including the approximately 8.1 million visually impaired Americans the Complaint itself identifies. (Compl. ¶ 3; Sharma Decl. ¶ 12.)

**Sixth, and most importantly, remediation was proactive—not reactive to litigation.** Defendant began remediation upon receiving the demand letter—before any lawsuit was filed. The bulk of the work was complete by the time the Complaint was filed on January 30, 2026. (Sharma Decl. ¶¶ 4–7; Lentz Decl. ¶¶ 4–5.) The decision was made independently and in good faith. (Sharma Decl. ¶ 13.) *Cf. FBI*, 601 U.S. at 244,

### 4. Plaintiff's anticipated counter-arguments are unavailing.

**Plaintiff may argue that websites are inherently dynamic.** This argument supports Defendant's position. It is precisely because websites are dynamic that Defendant deployed continuous automated monitoring. (Lentz Decl. ¶¶ 6(d), 13.)

**Plaintiff may note the Complaint alleges barriers "not limited to" those listed.** (Compl. ¶ 32.) Defendant's remediation was not so limited either. 500 remediations across 15+ categories address far more than the eight enumerated barriers. (Lentz Decl. ¶ 15.)

### 5. *The class action allegations do not save the case from mootness.*

No class has been certified. Anderson's individual claims are moot. A plaintiff whose individual claims are moot cannot adequately represent a class. The Complaint's class allegations are formulaic. (See Compl. ¶¶ 51–56.)

### B. Alternatively, Plaintiff Lacks Article III Standing

A plaintiff must demonstrate injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

### 1. *Plaintiff's claims are not redressable.*

With every barrier remediated (Lentz Decl. ¶¶ 10–11), a favorable decision would provide nothing Plaintiff does not already have. Redressability is absent. *Already, LLC*, 568 U.S. at 91; *Scherr v. Marriott Int'l*, 703 F.3d 1069, 1074 (7th Cir. 2013).

### 2. *Plaintiff's "intent to return" is conclusory.*

Injunctive-relief standing requires a "real and immediate" threat of future injury. *L.A. v. Lyons*, 461 U.S. 95, 102 (1983); *Silha*, 807 F.3d at 173. Anderson's assertion of intent (Compl. ¶ 41) is formulaic. The Supreme Court has signaled skepticism of tester standing. *Acheson Hotels, LLC v. Laufer, 601 U.S. 1* (2023); *id.* at 71 (Barrett, J., concurring); *id.* (Thomas, J., concurring).

### 3.  The alleged injury is stale.

Anderson's sole visit occurred September 8, 2025—nearly five months before the Complaint. (Compl. ¶ 40.) No subsequent visits are alleged. Past injury without a real and immediate threat of future harm is insufficient. *Lyons*, 461 U.S. at 105.

### C.  Alternatively, the Complaint Fails to State a Claim

### 1.  The Complaint is boilerplate.

Large portions of the 19-page Complaint are generic descriptions of ADA law and screen-reader technology not specific to this Defendant. The site-specific allegations occupy a single paragraph (¶ 35), five of whose eight listed barriers were not mentioned in the demand letter six weeks earlier. (Compare Sharma Decl., Ex. 1, App. B, with Compl. ¶ 35.)

### 2.  No legally mandated WCAG standard exists for Title III.

The Complaint treats WCAG 2.2 (¶ 26) as the legal standard, but no regulation requires private businesses to comply with any specific WCAG version. The DOJ's April 2024 rule mandating WCAG 2.1 AA applies only to Title II. *See* 28 C.F.R. § 35.200. While WCAG is a useful benchmark, see *Morgan v. Joint Admin. Bd.*, 268 F.3d 456 (7th Cir. 2001), no binding authority mandates it for private entities.

### 3.  The unexplained expansion of allegations undermines credibility.

The demand letter identified 3 barriers. (Sharma Decl., Ex. 1, App. B.) The Complaint lists 8. (Compl. ¶ 35.) The five new barriers appeared only after Defendant did not respond by the settlement deadline—a pattern characteristic of serial-filer litigation.

# IV. CONCLUSION

Defendant respectfully requests dismissal with prejudice.

Plaintiff's claims are moot. Every alleged barrier has been remediated—most of them before the Complaint was filed, and all of them before it was served. (Sharma Decl. ¶¶ 4–7; Lentz Decl. ¶¶ 4–5, 7–11; Lentz Decl., Ex. 1.) Defendant has implemented permanent structural code changes, deployed continuous monitoring, published a public commitment to WCAG 2.1 AA, and retained qualified professionals. (Lentz Decl. ¶¶ 12–13; Sharma Decl. ¶¶ 11–12.) It is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 189.

No fees are appropriate. Defendant's remediation—initiated before suit (Sharma Decl. ¶¶ 4–7)—does not render Plaintiff a "prevailing party." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001).

Respectfully submitted,

*/s/ Sagar Sharma*
Sagar Sharma, Esq.
Sagsharma LLC
33 North Dearborn Street, Suite 2400
Chicago, IL 60602
(917) 275-7109
sagar@sagsharma.com

Dated: February 27, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2026, I caused the foregoing to be filed via

CM/ECF, which will send notification to all counsel of record.

*/s/ Sagar Sharma*
Counsel for Defendant